**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|                          |   |                            |
|--------------------------|---|----------------------------|
| MICHAEL BENJAMIN,        | : |                            |
|                          | : |                            |
|              Plaintiff   | : |                            |
|         v.               | : | CIVIL ACTION NO. 15-2513   |
|                          | : |                            |
| JUAN MORALES,            | : |                            |
| DENIS ENGLE,             | : |                            |
| KIM RHODES, and          | : |                            |
| KUTZTOWN UNIVERSITY      | : |                            |
|                          | : |                            |
|              Defendants  | : |                            |

_____

**Henry S. Perkin, M.J.**                                      **March 11, 2016**

## MEMORANDUM

   This matter is before the Court on the Motion to Dismiss Plaintiff's Complaint,

which motion was filed by defendants on August 10, 2015.[1]  Plaintiff's Response in Opposition

to Defendants' Partial Motion to Dismiss was filed August 27, 2015, and a Reply in Further

Support of Defendants' Motion to Dismiss Plaintiff's Complaint was filed on September 15,

2015.  Having reviewed and considered the contentions of the parties, the Court is prepared to

rule on this matter.

## Procedural History

   On May 7, 2015, Plaintiff Michael Benjamin initiated this matter by filing a civil

rights Complaint against Juan Morales, Denis Engle, Kim Rhodes, and Kutztown University in

the United States District Court for the Eastern District of Pennsylvania.  In Count I of his

Complaint, Plaintiff seeks monetary relief pursuant to 42 U.S.C. §1983 for alleged violations of

---

[1]  A Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint was
filed in conjunction with the motion to dismiss.  See Dkt. No. 9.

his First Amendment constitutional rights in connection with alleged retaliatory actions taken against him beginning in approximately March 2013 and continuing through May 2013.  In Count II of his Complaint, Plaintiff asserts claims of discrimination, a hostile work environment, and retaliation pursuant to Title VII (42 U.S.C. §2000e, *et seq*) and the Pennsylvania Human Relations Act ("PHRA") (43 P.S. §§951, *et seq*).  Count III of the Complaint, which is not a subject of defendants' motion to dismiss, seeks monetary relief for civil assault and negligent infliction of emotion distress pursuant to the Restatement (Second) of Torts §§ 21 and 436. Plaintiff also seeks punitive damages against the defendants.

## Facts

According to the Complaint, the pertinent facts to this Court's determination are as follows:

Plaintiff, Michael Benjamin, was hired on or about November 13, 2006 by Kutztown University as a Maintenance Repairman II.  His job duties and responsibilities involved maintenance and repair work in the buildings, mechanical, electrical trades, and grounds work.  His supervisors were defendant Juan Morales (night maintenance supervisor) and defendant Kim Rhodes (facility supervisor).[2]  Defendant Denis Engle is a human resource representative.[3]

In the Complaint, Plaintiff avers that, beginning in 2006 and continuing through 2013, Juan Morales ("Morales") would hassle him and continually deny his verbal requests to

---

[2]    While Kyle Mills (maintenance supervisor) and Jeff Grim (overseer of all facilities) were also identified as supervisors, we note that they are not listed as individual defendants in the Complaint.

[3]    All of the individual defendants (Juan Morales, Kim Rhodes, and Denis Engle) were identified in the Complaint as being "supervisor[s] with control and authority over the Plaintiff's terms and conditions of employment with Kutztown  University."  See Complaint at ¶¶6-8.

use his earned time off from work.  Plaintiff avers that Morales did not follow university policy with respect to his requests for time off.  Plaintiff asserts that he was subjected to the following verbal harassment by Morales when requesting time off: "Now you have done it. Now you have screwed everything up;" "you only took the time off because you know it cannot be denied if submitted six months in advance;" "you have screwed up the whole system;" and "why do you have to be different than anyone else."  According to the Complaint, Morales did not hassle any other maintenance employees when they requested time off from work.

Plaintiff contends that when he was denied a posted position as a painter, a position for which he was qualified, he indicated that he would be filing a grievance about the denial. Morales called him and stated, "If you [file a grievance] there will be a target painted on the back of your head."  According to the Complaint, Morales also made several statements directly to Plaintiff about how Morales always carried a handgun and that management had the ability to make his job very difficult if he ever filed a grievance with his union.  Morales would also brag to the other night maintenance employees that he carried a hand gun with him all the time.

Other maintenance employees advised Plaintiff that Morales would hold shift meetings to "yell, criticize, and harass" Plaintiff on an almost daily basis, and order the other maintenance employees to follow Plaintiff around campus, stalk him on his job sites, and report back to Morales.  Plaintiff also overheard Morales making disparaging remarks about his religious beliefs (Native American and Jewish religious beliefs) such as, "Christmas is Christmas damnit, there is no Hanukkah, Kwanzaa, or Happy Holidays . . . we live in America."

3

According to the Complaint, in March 2013, Morales instructed Plaintiff to "work out" his vacation request for the upcoming year. Plaintiff was instructed by Morales to find coverage for his time off, but the other maintenance employees, at the direction of Morales, advised Plaintiff that they would not cover his shifts, stating that they were "not qualified." On April 3, 2013, Morales had a meeting with Plaintiff where he stated that Plaintiff was, "responsible for upsetting everyone" and that since March was over, he no longer had to grant him time off because he had missed the deadline for requests. Plaintiff was very upset during this meeting.

On April 4, 2013, Plaintiff reported to Human Resource representative Dennis Engle ("Engle") for assistance, and complained of verbal abuse and bullying by Morales . Engle instructed him to follow policies and procedures regarding taking time-off and everything would "work out okay." Plaintiff represents that the situation did not change, and he remained under the supervision of Morales.

On April 11, 2013, Plaintiff had a meeting with facility supervisor, Kim Rhodes ("Rhodes"). According to the Complaint, Plaintiff complained to her about the harassment and bullying by Morales. Plaintiff contends that she responded that "it is [was] a matter of perspective," and advised him to seek help from employee assistance. She did not follow up with Plaintiff regarding this complaint.

Following the complaints made to Engle and Rhodes, it is alleged by Plaintiff that the behavior of Morales worsened. Morales continued following Plaintiff around campus, and ordered other employees to do the same. In particular, on May 22, 2013, Plaintiff was ordered by Morales to wait for him at his work location. At that meeting, Morales began yelling at Plaintiff

4

regarding his whereabouts on his shift, and shouted that, "things were going to change." Morales approached Plaintiff from fifteen feet away and walked within two feet of him yelling and putting his finger in his face. Morales then stated to Plaintiff that he was "going to put an end to [Plaintiff's] games."

On May 23, 2013 Plaintiff submitted a statement about the assault by Morales, and expressed that he could no longer work under the supervision of Morales. A copy of the statement was given to Engle in human resources, the facilities department, and the university police. Plaintiff also filed a grievance with his workers union. A meeting was held on July 2, 2013 between Plaintiff's union representatives, Rhodes, and Engle to discuss the incident where Morales threatened Plaintiff. At that time, Rhodes and Engle advised that there were no open positions for Plaintiff other than his current position under the supervision of Morales. With respect to the grievance, a union determination was made that the allegations were unfounded. This determination, Plaintiff contends, was made following an investigation that was completed by Engle and Rhodes. Plaintiff avers that the investigation was biased, incomplete, and corrupt. More specifically, Plaintiff contends that neither Engle nor Rhodes investigated or subpoenaed any text messages that were sent by Morales, which evidenced Morales calling Plaintiff derogatory names.

Plaintiff avers that he consulted with employee assistance, who referred him to psychologist, Gail Salomon. Plaintiff contends that Dr. Salomon specifically instructed him that he should not return to work under the environment created by Morales, even if Morales was not on the campus that day. Plaintiff did not return to work after May 23, 2013, and he applied for unemployment compensation benefits. On June 23, 2013, it was held that Plaintiff was

5

entitled to unemployment compensation benefits because he had "a necessitous and compelling reason for taking a leave of absence and [he] exhausted all alternatives prior to taking a leave of absence." Although Kutztown appealed, Plaintiff's benefits were upheld because he had a reasonable fear for his safety which necessitated his taking a leave of absence.

On October 1, 2013, Plaintiff completed an intake questionnaire with the Pennsylvania Human Relations Commission, and defendants were notified. Plaintiff was terminated from employment with Kutztown University on December 18, 2013. On January 21, 2014, Plaintiff filed a complaint with the EEOC alleging retaliation, discrimination, and a hostile work environment. Defendants were notified of the EEOC complaint.

### Standard of Review

On a motion to dismiss for failure to state a claim, courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007) (citing Papasan v. Allain, 478 U.S. 265, 268 (1986)).

In order to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662 (2009). A claim has facial plausibility when the plaintiff pleads factual

6

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  "Only a complaint that states a plausible claim for relief survives a motion to dismiss."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).

<u>Discussion</u>

**Count I - Claims for First Amendment Retaliation Pursuant to 42 U.S.C. §1983**

As noted above, Plaintiff has brought a claim against defendants for First Amendment retaliation pursuant to 42 U.S.C. §1983.  As correctly noted by defendants, the Eleventh Amendment bars any Section 1983 claims against Kutztown University, and its employees acting in their official capacities.[4]  Plaintiff concedes this by agreeing to withdraw, without prejudice,[5] all claims brought against Kutztown University brought under 42 U.S.C. §1983.  <u>See</u> Plaintiff's Response at 9.  Accordingly, Count I will be dismissed as to Kutztown University.

---

[4]    The Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction.  <u>Blanciak v. Allegheny Ludlum Corp.</u>, 77 F.3d 690, 693 n.2 (3d Cir.1996) (citing <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 98-100 (1984)).  A party may properly raise Eleventh Amendment immunity in a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). <u>Id.</u>

       Kutztown University, as part of the Pennsylvania State System of Higher Education ("PASSHE"), is not a person subject to liability for damages under Section 1983.  <u>See</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989); <u>McCauley v. Univ. of the V.I.</u>, 618 F.3d 232, 241 (3d Cir. 2010); <u>Bartlett v. Kutztown Univ.</u>, 2015 WL 766000, at *4, *12 (E.D. Pa. Feb. 23, 2015) (finding that the Third Circuit and district courts within the Circuit have consistently held that PASSHE and its member universities (including Kutztown University) are entitled to sovereign immunity under the Eleventh Amendment);  <u>Coulter v. East Stroudsburg Univ.</u>, 2010 WL 1780400 (M.D. Pa. May 4, 2010) (finding Eleventh Amendment precluded civil rights liability and therefore barred plaintiff's Section 1983 claim against a State System member university).

[5]    Plaintiff asserts that the claims against Kutztown University are withdrawn without prejudice to bring this cause of action in a Pennsylvania state court pending the outcome of the remaining claims.  This Court makes no comment as to whether Plaintiff will be permitted to bring such claims in state court, and, instead, will reserve that determination for the state courts.

The Eleventh Amendment also bars a suit against state officials sued in their official capacities because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury.  Hafer v. Melo, 502 U.S. 21, 25 (1991) ("Although 'state officials literally are persons,' an official-capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself.'") (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, (1989)).  The Eleventh Amendment, however, does not bar suits against state officials in their personal capacities.  Id. at 23 (holding that "state officials sued in their individual capacities are 'persons' for purposes of §1983.").

In his response to the motion to dismiss, Plaintiff avers that he sued the individual defendants (Morales, Engle, and Rhodes) in their personal capacity.  However, in order to determine whether a plaintiff sued a defendant in his personal capacity, official capacity, or both, the Court must look to the complaint and the course of proceedings.  Atwell v. Schweiker, 274 F. App'x 116, 118 (3d Cir. 2007) (citing Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. 1990), aff'd, 502 U.S. 21 (1991)).  Courts have found personal capacity claims where the plaintiff sued the official only and not the state.  Id. (citing Melo, 912 F.2d at 636).  Conversely, allegations that an official policy or custom led to the plaintiff's injuries supports the conclusion that the plaintiff is bringing an official capacity claim.  Woodson v. Prime Care Med., Inc., No. 12-cv-04919, 2013 U.S. Dist. LEXIS 8861, 2013 WL 247372, at *4 (E.D. Pa. Jan. 23, 2013).

In this matter, Plaintiff has sued both Kutztown University as well as Morales, Engle, and Rhodes, which somewhat indicates an intention to sue the individual defendants in their official capacity.  In addition, we note that Plaintiff's Complaint is devoid of any assertions

of personal liability as to the individual defendants.  To the contrary, Plaintiff avers that Morales, Engle, and Rhodes were "supervisor employees, [who] created a policy for Kutztown University and acted as aiders and abetters of the policy to discrimin[ate] against subordinate employees based on sex and/or race; to create a hostile work environment and/or to retaliate against subordinate employees for opposing perceived actions to be illegal under Title VII or the First Amendment."  See Plaintiff's Complaint at ¶ 3.  Plaintiff further identifies Morales, Engle, and Rhodes as "supervisor[s] with control and authority over the Plaintiff's terms and conditions of employment with Kutztown University" who, "as supervisors carried out Kutztown's policy of employment discrimination and retaliation."  See Plaintiff's Complaint at ¶¶ 6-8, 72.  After a careful review of the Complaint, this Court concludes that Plaintiff brings this suit against the individual defendants in their official capacities only.  Such claims are barred by the Eleventh Amendment, and, accordingly, Count I will be dismissed in its entirety.

### Count II - Claims for Discrimination, Hostile Work Environment, and Retaliation Pursuant to Title VII

To establish a *prima facie* case of retaliation under Title VII, Plaintiff must plead (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action.  See Abramson v. William Paterson College, 260 F.3d 265, 286 (3d Cir. 2001).  Referring to the Complaint, defendants aver in their motion to dismiss that the actions alleged by Plaintiff do not constitute "adverse actions" as a matter of law.[6]  Because defendants

---

[6]     More specifically, defendants contend that Plaintiff identifies only three purported "adverse" actions taken against him in retaliation for his engagement in protected activity: (1) Morales followed him around campus with greater frequency at the end of April of 2013; (2) Morales yelled at Plaintiff that "things were going to change" and "I am going to put an end to your games"; and (3) Morales came within two feet of Plaintiff and put his finger in Plaintiff's face. In so doing, defendants avers that these actions do not constitute "adverse actions" as a

do not address any of the other prongs, it appears to the Court that those prongs have been sufficiently pled in the Complaint.

Defendants fail to note that Plaintiff avers in his Complaint that he was terminated from his employment with Kutztown University.  See Plaintiff's Complaint at ¶ 66.  Plaintiff's termination clearly fulfills the second prong of the *prima facie* case for a retaliation claim. Abramson, 260 F.3d at 288.  A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (U.S. 1998).  Accordingly, defendants motion to dismiss with respect to Plaintiff's Title VII claims is denied.

**Count II - Claims for Discrimination,<br>Hostile Work Environment, and Retaliation Pursuant to PHRA**

As correctly noted by defendants, the Eleventh Amendment similarly bars any claims under the PHRA against Kutztown University.[7]  Plaintiff concedes this by agreeing to withdraw, without prejudice,[8] all claims brought against Kutztown University brought under the PHRA.  See Plaintiff's Response at 11.  Accordingly, the PHRA claims contained in Count II will be dismissed as to Kutztown University.

---

matter of law and may therefore not form a basis for any retaliation claim.  See Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint at 14-17.

[7]      As noted by defendants, Federal Courts do not have jurisdiction to order state agencies or officials to comply with state law. See Pennhurst , 465 U.S. at 105-106 (1984); Allegheny Cty. Sanitary Auth. v. USEPA, 732 F.2d 1167, 1173-1174 (3d Cir. 1984).  Neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment. Pennhurst, 465 U.S. at 121.

[8]      Plaintiff asserts that the claims against Kutztown University are withdrawn without prejudice to bring this cause of action in a Pennsylvania state court pending the outcome of the remaining claims.  This Court makes no comment as to whether Plaintiff will be permitted to bring such claims in state court, and, instead, will reserve that determination for the state courts.

Plaintiff contends, however, that even if Kutztown University is entitled to immunity by virtue of the Eleventh Amendment, this would not preclude him from pursuing claims against the individual defendants.  See Plaintiff's Response at 11-12.  We disagree.  First, as noted above, this Court concluded that the individual defendants were sued only in their official capacities.  The Eleventh Amendment bars a suit against state officials sued in their official capacities because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury.  Hafer, 502 U.S. at 25.

Further, even if Plaintiff had sued defendants Morales, Engle, and Rhodes, in their personal capacities, it is established that if an employer is not liable under the PHRA for any discriminatory practice, then an individual employee cannot be held liable for aiding and abetting a discriminatory practice.  See Deans v. Kennedy House, Inc., 998 F. Supp. 2d 393, 414 n.20 (E.D. Pa. 2014) ("Although the PHRA permits claims against individuals for aiding or abetting an unlawful discriminatory practice, . . . individual employees cannot be held liable if the employer is not liable for a discriminatory practice."), affirmed, 587 F. App'x 731 (3d Cir. 2014); Scott v. Sunoco Logistics Partners, LP, 918 F. Supp. 2d 344, 357 n.5 (E.D. Pa. 2013) ("If the employer is not liable for any discriminatory practice then an individual employee cannot be held liable for aiding and abetting a discriminatory practice."); Unangst v. Dual Temp Co., 2012 WL 931130, at *9 (E.D. Pa. Mar. 19, 2012) ("[Employees] cannot violate Section 955(e) when there is no corresponding Section 955(a) violation by an employer to aid and abet.").  Because Plaintiff has withdrawn the PHRA claims against Kutztown University, any purported PHRA claims against the individual employee defendants for aiding and abetting must also fail as a matter of law.  Accordingly,  the PHRA claims contained in Count II will be dismissed as to

Morales, Engle, and Rhodes.

## Claims for Punitive Damages

To the extent that Plaintiff seeks punitive damages in his Complaint, defendants seek dismissal of same by averring that government agencies are traditionally exempt from the assessment of punitive damages against them.  See Feingold v. SEPTA, 517 A.2d 1270 (Pa. 1986); see also Doe v. County of Centre, PA, 242 F.3d 437 (3d Cir. 2001).[9]  Although Plaintiff concedes that punitive damages are not recoverable against Kutztown University (Plaintiff's Response at 19) under title VII or the PHRA, he asserts that he is entitled to punitive damages against the individual defendants in their personal capacities pursuant to §1983.  As noted above, however, the §1983 claims have been dismissed against the individual defendants because, as the Complaint indicates, Plaintiff did not bring suit against the individual defendants in their personal capacities.  Accordingly, Plaintiff is not entitled to punitive damages against Morales, Engle, or Rhodes pursuant to §1983.

---

[9]       As further support of their position, defendants note the following case law:

> In general, courts viewed punitive damages as contrary to sound public policy, because such awards would burden the very taxpayers and citizens for whose benefit the wrongdoer was being chastised. The courts readily distinguished between liability to compensate for injuries inflicted by a municipality's officers and agents, and vindictive damages appropriate as punishment for the bad-faith conduct of those same officers and agents. Compensation was an obligation properly shared by the municipality itself, whereas punishment properly applied only to the actual wrongdoers. The courts thus protected the public from unjust punishment, and the municipalities from undue fiscal constraints.

City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 263 (1981).  Consistent with the holding of the United States Supreme Court in Newport, courts in the Third Circuit have held that public employers, such as Kutztown University and its supervisors, are immune from suit for punitive damages under Title VII. See Udujih v. City of Philadelphia, 513 F. Supp. 2d 350, 358 (E.D. Pa. 2007). Moreover, Plaintiff is not entitled to seek punitive damages under the PHRA. See Gagliardo v. Connaught Labs., Inc., 311 F.3d 565, 570 n.3 (3d Cir. 2002); Hoy v. Angelone, 720 A.2d 745, 751 (Pa. 1998) ("In the absence of express statutory language or any further legislative guidance, we hold that punitive damages are not available under the Act.").

**Conclusion**

Defendants motion to dismiss is granted in part.  Count I of Plaintiff's Complaint is dismissed.  The PHRA claims contained in Count II of the Complaint are dismissed.  Any claims for punitive damages pursuant to §1983, Title VII, or the PHRA are dismissed.  In all other respects, the motion to dismiss is denied.

An Order follows.